IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HUGHES INDUSTRIAL SALES, LLC :
:
    Plaintiff :
:
v. : 3:12-cv-0497
: (JUDGE MARIANI)
DIAMOND MANUFACTURING COMPANY :
:
    Defendant :

## MEMORANDUM OPINION

The instant dispute arises upon Plaintiff's Motion to Compel Discovery (Doc. 18) filed on August 21, 2012. Oral argument was scheduled on the matter, and the parties were heard by the Court on November 13, 2012. Because the Court writes for a limited purpose, only those facts relevant to the instant discovery dispute are included below.

Plaintiff's written submissions indicate that it served a second set of discovery demands upon Defendant on July 24, 2012, in which it sought "additional documents related to orders placed in Hughes's exclusive territory, the invoices Diamond sent to customers in Hughes's exclusive territory, documents Diamond sent to its customers with shipments of product, and proof of payments Diamond received from customers in Hughes's exclusive territory." *See* Pl.'s Br. in Supp. Mot. to Compel Discovery, at 1-2, ECF Dkt. 18-1. Plaintiff complains that Defendant "refuses to provide any relevant documents or information generated after August 25, 2011, the date of Defendant's attempted, but ineffective, termination of the parties' agency contract." *See* Pl.'s Br. in Supp. Mot. to Compel

Discovery, at 2. Plaintiff further asserts that it "is entitled to relevant information and documents created after and dealing with sales and/or shipments that occurred after August 26, 2011 and <u>continuing to the present</u> as well as complete answers to interrogatories and complete production of requested documents dealing with the period prior to August 26, 2011." See Pl.'s Br. in Supp. Mot. to Compel Discovery, at 2 (emphasis added).

For purposes of determining the propriety of Plaintiff's discovery request, it is necessary to make certain preliminary findings with respect to the meaning of the parties' Agency Sales Agreement. See Agency Sales Agreement, ECF Dkt. 18-4. We do so only for the purposes of determining the scope of discovery, and our interpretation of the parties' agreement is without prejudice to either party's right to assert a contrary meaning in a dispositive motion or at trial. But, again, because the parties have requested the Court during the infancy of this case to rule upon a discovery dispute that unavoidably requires an interpretation of the agreement on its face without the submission by either party of any other indicia of their intentions in entering into the agreement, the Court has decided to proceed in this fashion while reserving the right of each party to advance its interpretation of the meaning and scope of the agreement for purposes of addressing liability and damages.

Plaintiff contends that the Agency Sales Agreement entered into between the parties required written notice for any termination of the agreement to be effective; thus, Plaintiff argues that the August 26, 2011 notice of termination, provided over the telephone, was ineffective. Plaintiff further posits that proper termination was effectuated by the April 13,

Discovery, at 2. Plaintiff further asserts that it "is entitled to relevant information and documents created after and dealing with sales and/or shipments that occurred after August 26, 2011 and <u>continuing to the present</u> as well as complete answers to interrogatories and complete production of requested documents dealing with the period prior to August 26, 2011." See Pl.'s Br. in Supp. Mot. to Compel Discovery, at 2 (emphasis added).

For purposes of determining the propriety of Plaintiff's discovery request, it is necessary to make certain preliminary findings with respect to the meaning of the parties' Agency Sales Agreement. See Agency Sales Agreement, ECF Dkt. 18-4. We do so only for the purposes of determining the scope of discovery, and our interpretation of the parties' agreement is without prejudice to either party's right to assert a contrary meaning in a dispositive motion or at trial. But, again, because the parties have requested the Court during the infancy of this case to rule upon a discovery dispute that unavoidably requires an interpretation of the agreement on its face without the submission by either party of any other indicia of their intentions in entering into the agreement, the Court has decided to proceed in this fashion while reserving the right of each party to advance its interpretation of the meaning and scope of the agreement for purposes of addressing liability and damages.

Plaintiff contends that the Agency Sales Agreement entered into between the parties required written notice for any termination of the agreement to be effective; thus, Plaintiff argues that the August 26, 2011 notice of termination, provided over the telephone, was ineffective. Plaintiff further posits that proper termination was effectuated by the April 13,

2012 letter sent from Diamond to Hughes. Defendant argues that termination was proper on August 26, 2011, and that the April 13, 2012 letter served as a confirmation of the earlier non-written notice.

Plaintiff's written submissions argue that Defendant should be required to provide all records, up to and including the present, regarding orders made to the present time, which were originally procured by Plaintiff's solicitations during the period of its sales agency. Plaintiff maintains that it is entitled to commissions on every order/shipment made by Defendant that may have been procured by Plaintiff in the sense that such sale is a product of Plaintiff's original solicitation efforts on Defendant's behalf, which created the buy-sell relationship between Defendant and Defendant's customers, and that the provision of such commissions should continue in perpetuity. At oral argument, however, counsel for Plaintiff indicated that individual sales transactions with a particular client may indeed be discrete, and that although a particular client may have been procured by Plaintiff, a sale at a later date would not necessarily constitute a sale connected to an earlier transaction:

> THE COURT: That's my question. Aren't the sales discrete, so that a sale made prior to April 13, 2012 is not necessarily the same sale that might be effectuated two months later.
>
> MS. KRAMER: That's correct Your Honor. They keep re-ordering the same stuff basically.

See Oral Argument Tr. 19:15-20.

> THE COURT: Are the re-orders continuing of a similar sale or discrete sales because it seems to me that becomes a critical fact in light of your claim and your analysis of the law?

3

> MS. KRAMER: They are—I think they are themselves discrete sales and each time there's a new invoice issue. They don't in August say we are for the next twelve months going to re-order more stuff every month they keep re-ordering the same stuff over and over again.

See Oral Argument Tr. 20:13-21.

Plaintiff's counsel further noted that it is claiming commissions on such later orders. See Oral Argument Tr. 19:21-23.

Defendant argues that it is contrary to any established law and manifestly unreasonable to require it to provide sales commissions to Plaintiff *ad infinitum*. At oral argument, counsel for Defendant noted that the case would continue forever, and that discovery would lack any temporal limitations if Plaintiff's argument regarding the scope of discovery prevailed. See Oral Argument Tr. 10:7-21, 13:22-23.

In large part, Plaintiff relies upon the North Carolina Sales Representative Act ("Act"), *N.C. Gen. Stat.* § 66-190 *et seq.*, for the proposition that Plaintiff is entitled to commissions for sales for which it was the "procuring cause." Specifically, Plaintiff claims that Defendant violated § 66-192.1 "by attempting to improperly terminate the Agreement with [Plaintiff] and thereby revoking offers of commissions to avoid paying commissions to [Plaintiff] on the Aeroglide and Purolator sales after such orders were received by [Defendant], obtained through the efforts of [Plaintiff], and eventually fulfilled by [Defendant]." Pl.'s Br. in Supp. Mot. to Compel Discovery, at 6. The Court questions the applicability of § 66-192.1 of the Act, however, because that section addresses "revocable" offers, not the type of irrevocable

offers, i.e., those memorialized as contracts, implicated in this case. In its moving brief, Plaintiff argues:

> Moreover, Pennsylvania recognizes the Restatement (2d) Agency principle, which Diamond violated, that prohibits a principal from terminating the contract in order to avoid paying the sales agent the commissions on sales that he procured prior to termination:
>
>> An agent to whom the principal had made an irrevocable offer of compensation if he accomplishes a specified result is entitled to the promised amount if the principal, in order to avoid payment of it, revokes the offer and thereafter the result is accomplished as a result of the agent's prior efforts.

Pl.'s Br. in Supp. Mot. to Compel, at 5 (quoting Restatement (2d) Agency § 454).

Plaintiff, in support of its Motion to Compel, thus asserts the applicability of the Restatement (2d) Agency, which delineates the rights of an agent in the circumstance where the principal/agent relationship is formed upon an irrevocable offer of commissions. This argument lends no support to Plaintiff's claim based upon § 66-192.1. That section addresses the relative rights and responsibilities of a principal and agent where the source of commissions is a "revocable offer." With regard to contract revocation, Pennsylvania law is clear:

> An offeree's power to accept is terminated by (1) a counter-offer by the offeree; (2) a lapse of time; (3) a revocation by the offeror; or (4) death or incapacity of either party. See *First Home Savings Bank, FSB v. Nernberg*, 436 Pa.Super. 377, 648 A.2d 9, 15 (1994) (citing Restatement (Second) of Contracts § 36 (1981)), *appeal denied*, 540 Pa. 620, 657 A.2d 491 (1995). However, "[o]nce the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such." Restatement (Second) of Contracts § 42, Comment c. (1981).

*Mastroni-Mucker v. Allstate Ins. Co.*, 2009 PA Super 101, 976 A.2d 510, 518 (Pa. Super. Ct. 2009). Until an offer is accepted, a contract may be revoked. *See Step Plan Services, Inc. v. Koresko,* 12 A.3d 401, 409 (Pa. Super. 2010) ("Once the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such.")

A contract that has not been accepted is subject to revocation, but once the offeree has accepted the contract, i.e. by performance of a particular task, the offeror can no longer revoke. In the present matter, Plaintiff accepted Defendant's offer when it procured certain customers in return for the promise of commissions, and at that point, the contractual relationship formed under the Agency Sales Agreement rendered the offer for compensation irrevocable. Accordingly, Plaintiff's only statutory remedy under the Act is through § 66-191, which requires resolution of disputes over payment of commissions on termination of a contract between a sales representative and a principal by reference to the terms of the contract itself.

Thus, § 66-191 provides:

When a contract between a sales representative and a principal is terminated for any reason other than malfeasance on the part of the sales representative, the principal shall pay the sales representative all <u>commissions due under the contract</u> within 30 days after the effective date of the termination and all commissions that become due after the effective date of termination within 15 days after they become due. If the principal does not make payment as required by this section, the sales representative shall make a written demand upon principal, send by certified mail, for the commissions then due. The principal shall respond in writing to the demand within 15 days after the principal receives the written demand.

*N.C. Gen. Stat.* § 66-191 (emphasis added).

6

Plaintiff is a North Carolina resident and was tasked with procuring customers within that state; thus, according to the language of § 66-192 ("Civil Liability"), personal jurisdiction attaches to Defendant under the Act. See N.C. Gen. Stat. § 66-192 (c) ("A principal who is not a resident of this State who contracts with a sales representative to solicit orders in this State shall be subject to the personal jurisdiction as provided in G.S. 1-75-4"). However, even if § 66-192.1 were applicable, that section only permits the recovery of a commission which was "agreed upon," thus again requiring a determination of what commissions the principal agreed to pay in return for the agent's performance. See N.C. Gen. Stat. § 66-192.1.

Several North Carolina cases construing the Act indicate that "commissions due" or "amounts due" are matters to be decided based upon the underlying contract. See *Morrison v. SACO Industries, Inc.*, No. 05-1100, 2007 WL 148926, * 3 (M.D.N.C. Jan. 16 2007). In *Morrison*, the Court denied summary judgment on a claim under the Act, as the underlying contract raised an issue of fact:

> With regard to Plaintiff's alternative claim under the Sales Representative Act, an individual covered by the Act is entitled to "all commissions due under the contract within 30 days after the effective date of the termination and all commissions that become due after the effective date of termination within 15 days after they become due," unless the principal is able to show malfeasance on the part of the sales representative. N.C. Gen. Stat. § 66-191. Having reviewed the record and heard oral argument, the Court finds that a genuine dispute regarding whether and/or what commissions are "due" or "have become due" under the contract within the meaning of the Sales Representative Act.

*Morrison*, 2007 WL 148926, at * 3.

7

Similarly, in *Market Choice, Inc. v. New England Coffee Company*, No. 08-90, 2009 WL 2590651, * 3 (W.D.N.C. Aug. 18, 2009), the court referred to an underlying contract for indication of sales commissions due in an action brought under § 66-191. Thus, in the present dispute, the commissions due or agreed upon are dependent upon the Agency Sales Agreement entered into between the parties.

Plaintiff's citation to *Seneca Falls Machine Co. v. McBeth*, 368 F.2d 915, 918 n. 6 (3d Cir. 1966), in which the Court discussed § 454 of the Restatement 2d of Agency, although it is inapposite to any discussion concerning the North Carolina Act, nonetheless recognizes that analytically, determination of an "amount due" is a contractual matter. Thus, the amount owed to Plaintiff, if any, is to be determined by the relevant language contained in the Agency Sales Agreement. Further, it must be noted that Section 454 of the Restatement 2d of Agency, and the decision in *Seneca Falls Machine Co., supra*, both involve irrevocable offers. Plaintiff's citation of the Restatement (2d) Agency and *Seneca Falls Machine Co., supra,* in its Reply Brief are wholly unavailing to its advancement of § 66.192.1 of the North Carolina Act as a basis for its claim to commissions beyond the period set forth in Section 6 of the Agency Sales Agreement and, therefore, for discovery in support of those claims.

At oral argument, and in Plaintiff's moving papers, Plaintiff's counsel indicated that the North Carolina Act provided for greater latitude with regard to discoverable information than the Agency Sales Agreement. The Court does not agree with this conclusion, and

holds that the application of the North Carolina Act, with regard to the "amount due," makes clear that this determination is to be made by reference to the language of the Agency Sales Agreement. The Act's clear language, with regard to irrevocable contracts, does not permit recovery beyond the "commissions due under the contract." *See N.C. Gen. Stat.* § 66-191.

The Agency Sales Agreement holds, in pertinent part: "Commissions shall be deemed earned by Agent upon acceptance and/or delivery of the order by the Principal." The Agency Sales Agreement provides in § 6 that Plaintiff is entitled to receive commissions on all orders it can show it solicited during the thirty day period after the written notice of termination was given. The agreement does not provide that solicited orders made thirty days after termination give rise to claims for additional post-termination commissions if they are discrete orders from the same customer for the same product for which orders were solicited by Plaintiff and shipped during the term of the agreement or the thirty/ninety day period referenced in Article 6's termination provisions. In fact, requiring Defendant to pay commissions on Plaintiff's alleged procurements beyond the period prescribed in paragraph 6 would render paragraph 6 of the Agency Sales Agreement a nullity; thus, in order to effectuate the plain language of the contract and to render all of its constituent elements meaningful, Plaintiff's right to commissions must be determined in accordance with the termination provisions of the Agency Sales Agreement. Plaintiff thus appears entitled to all commissions that "he can clearly demonstrate were solicited during the thirty (30) days of the termination period." Assuming that the termination date of April 13, 2012, constitutes

the Agency Sales Agreement, Plaintiff, for purposes of the calculation of damages, only has reason to seek discoverable evidence of orders and related shipments up to, and including, July 12, 2012, which accounts for the contractual obligation to provide commission on orders solicited during the 30 days of the termination period and for shipments resulting from such orders for "ninety (90) days from the date of notice."

Thus, while the Court will not presently attempt to resolve the ultimate issues to be litigated in this case, for the limited purpose of discovery, the Court finds that Plaintiff shall be entitled only to "documents related to orders placed in [Plaintiff's] exclusive territory, the invoices [Defendant] sent to customers in [Plaintiff's] exclusive territory, documents [Defendant] sent to its customers with shipments of product, and proof of payments [Defendant] received from customers in [Plaintiff's] exclusive territory" for the period of January 1, 2009 through July 12, 2012.

DATE: November 19, 2012

Robert D. Mariani
United States District Judge